# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ISRAEL A. MAGNESON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-1053 (TSC) (DAR) |
| | ) | |
| RAYMOND EDWIN MABUS, JR., *in his official capacity as the Secretary of the Navy*, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Israel Magneson challenges the denial of his application to correct his military record by the Board for Correction of Naval Records (operating under authority delegated by the Secretary of the Navy). Shortly after this case was filed, it was referred to a Magistrate Judge for full case management. The parties previously filed a motion to dismiss and cross-motions for summary judgment, and in August 2013 the Magistrate Judge denied these motions without prejudice to allow Magneson to replead to articulate facts establishing this Court's jurisdiction. Magneson filed his amended complaint in October 2013, and before the Court are the parties' second cross-motions for summary judgment. The Magistrate Judge filed a Report and Recommendation on October 28, 2014. Because the case will be remanded for the Board to consider one of Plaintiff's arguments in the first instance, the Court need not reach the analysis in the Report and Recommendation and will not adopt it at this time. Plaintiff's motion is granted in part and denied in part and Defendant's motion is denied.

## I.  BACKGROUND

Magneson is a former Lieutenant in the United States Navy.  In February 2009, he was assigned as the Chief Engineer on the USS REUBEN JAMES.  (Am. Compl. ¶ 5).  At that time, his Planned Rotation Date—meaning the date he would rotate to a new position on another vessel—was February 2011.  (Administrative Record ("AR") 46).

During Magneson's tenure, the Commanding Officer of the JAMES (the "CO") had multiple discussions with Magneson to address issues related to Magneson's allegedly deficient performance.  In addition to these verbal discussions, Magneson received two Letters of Instruction that identified the CO's specific concerns and required Magneson to take corrective actions.  (AR 18-19; 22-23).  After the CO determined that Magneson's performance remained unsatisfactory, on July 2, 2010 the CO forwarded to Naval Personnel Command a request that Magneson be Detached for Cause ("DFC") from the JAMES.  (AR 15-24).  A DFC removes an officer from their current post before their normal transfer or planned rotation date.

DFCs are processed according to Military Personnel Manual ("Manual") section 1611-020.  (Def. Mot. Ex. 1).  Once a DFC is requested, the officer is given a chance to respond (which Magneson did).  (AR 25-30).  The request (along with the officer's rebuttal) is then forwarded through the chain of command back to the Naval Personnel Command, with each officer in the chain endorsing the request.  According to Manual 1611-020(11)(h), "[e]xpeditious processing and forwarding of a DFC request is mandatory" and "[i]n the absence of unusual circumstances, the DFC request should be forwarded within 5 working days of receipt by each command in the routing chain."  (Def. Mot. Ex. 1 at 8-9).  In this case, the DFC was endorsed five times by four different officers.  (Def. Mot. 4; AR 31-34).  The first occurred when the CO originally requested the DFC; the CO then endorsed the DFC a second time on July 30, 2010

2

after receiving Magneson's rebuttal.  The third, fourth, and fifth endorsements occurred on

August 17, September 11, and September 23, 2010, respectively.  (AR 32-34).  The Naval

Personnel Command acknowledged receipt of the fully endorsed DFC request on January 5,

2011, but advised the CO that it would not be completed prior to Magneson's Planned Rotation

Date in February 2011.  As a result, Magneson's Planned Rotation Date was extended to March

2011.

      At the same time the DFC request was pending, Magneson was also eligible for

promotion to Lieutenant Commander.  The officers who endorsed the DFC did not recommend

that Magneson be removed from the promotion list, but his promotion was nonetheless delayed

because of the pending DFC request.  (Am. Compl. ¶ 15).  On March 10, 2011 (approximately

one month after Magneson was notified that his promotion was delayed), Naval Personnel

Command formally approved the DFC request.

      Because of the likelihood that a DFC would prevent him from being promoted, in early

May 2011[1] Magneson submitted an application to the Board for Correction of Naval Records

("BCNR") requesting that the DFC order be expunged from his record and he be promoted to

Lieutenant Commander.  The BCNR is a board established by the Secretary of the Navy and is

comprised of civilians who review applications to correct naval records.  "Its function is to

consider applications properly before it for the purpose of determining the existence of error or

injustice in the naval records of current and former members of the Navy and Marine Corps, to

make recommendations to the Secretary or to take corrective action on the Secretary's behalf

when authorized."  32 C.F.R. § 723.2; *see also* 10 U.S.C. § 1552.  The BCNR reviews "all

pertinent evidence of record" and will deny an application where it finds "insufficient evidence

---

[1] Magneson claims he submitted the application on May 1, but his signature is dated May 3.  (Am. Compl. ¶ 28; AR 5).

3

to demonstrate the existence of probable material error or injustice." 32 C.F.R. § 723.3(e)(1)-(2).

The BCNR "relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties." *Id.* at § 723.3(e)(2).

On May 3, 2011—around the same time Magneson submitted his application to the BCNR—the Naval Personnel Command issued orders transferring Magneson to a new duty assignment. (Am. Compl. ¶ 19). While the application to the BCNR was pending, Magneson was officially removed from the Lieutenant Commander promotion list on December 7, 2011.

The BCNR issued its decision on March 15, 2012, denying Magneson's application because "the evidence submitted was insufficient to establish the existence of probable material error or injustice." (AR 1). The BCNR substantially concurred with an advisory opinion submitted by the Naval Personnel Command in response to Magneson's application. (AR 51-52). As a result of the BCNR's denial, Magneson filed this lawsuit in June 2012. In February 2013 (after the suit was filed), Magneson was involuntarily separated from the United States Navy for non-selection to the next higher rank, presumably because he had been removed from the Lieutenant Commander promotion list as a result of the DFC. (Am. Compl. ¶ 40).

## II.    LEGAL STANDARD

The Court reviews the BCNR's decision under section 706 of the Administrative Procedures Act. 5 U.S.C. § 706. Under the Act, the Court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court's review is "highly deferential" and begins with a presumption that the agency's actions are valid. *Envtl. Def. Fund v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). The Court is "not empowered to substitute its judgment for that of the agency," *Citizens to Preserve*

4

*Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), but instead must consider only "whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fulbright v. McHugh*, No. 12-cv-1506, 2014 WL 4424750, at *4 (D.D.C. Sept. 9, 2014) (citing *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)).  Plaintiff bears the burden of establishing the invalidity of the agency's action. *Id.*  "[A]n agency's decision [need not] be a model of analytic precision to survive a challenge." *Dickson v. Sec'y of Def.,* 68 F.3d 1396, 1404 (D.C. Cir. 1995); *Frizelle v. Slater,* 111 F.3d 172, 176 (D.C. Cir. 1997).  Rather, "[a] reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Dickson,* 68 F.3d at 1404 (citation omitted); *Frizelle,* 111 F.3d at 176.

The BCNR (under its delegated authority from the Secretary of the Navy) has broad discretion when considering an application for correction.  Military corrections boards like the BCNR "*may* correct any military record . . . [when it] considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1) (emphasis added).  As a result of this broad discretion, reviewing the decision of a military corrections board like the BCNR requires an "unusually deferential application of the 'arbitrary or capricious' standard." *Kreis v. Sec'y of Air Force,* 866 F.2d 1508, 1514 (D.C. Cir. 1989).  "While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination" because the statute is permissive in nature, and does not "require[] [the board] to act whenever a court determines that certain objective conditions are

met, i.e., that there has been an error or injustice." *Kreis,* 866 F.2d at 1514.  Thus, a court's role

is to determine whether "the decision making process was deficient, not whether [the] decision

was correct." *Dickson,* 68 F.3d at 1405 (citation omitted).   However, "[t]o enable a court to

perform that review and ensure that the decision is not 'utterly unreviewable,' a military

corrections board 'must give a reason that a court can measure, albeit with all due deference,

against the "arbitrary or capricious" standard of the APA.'  Thus, if a military board of

corrections 'fail[s] to address . . . arguments that are not facially frivolous,' its decision must be

reversed and the matter remanded." *Pettiford v. Sec'y of Navy*, 774 F. Supp. 2d 173, 182

(D.D.C. 2011) (citations omitted).

## III.    ANALYSIS

Magneson challenges the BCNR's denial on two grounds: (1) that the Navy failed to

follow the requirement in Manual 1611-020(11)(h) that a DFC request be forwarded within 5

days of receipt by each endorsing officer; and (2) that Naval Personnel Command failed to

approve the DFC request by Magneson's "normal transfer or planned rotation date," as required

by Manual 1611-020.  Magneson argues that as a result of these two procedural failures, the DFC

order was invalid and therefore should be removed from his record, and the BCNR's refusal to

do so is arbitrary and capricious.  Defendant argues that the BCNR's decision is not arbitrary and

capricious and is amply supported by the administrative record.  Defendant further argues that

Magneson's interpretation of the pertinent regulations is incorrect and the Navy complied with

all procedural requirements during the DFC process, but that even if it did not, Magneson is still

not entitled to the relief he seeks.  According to Defendant, the BCNR was justified in finding no

"material error or injustice" in the processing of Magneson's DFC, and Magneson's personal

disagreement with the facts underlying the CO's decision to request the DFC is irrelevant both to the BCNR's decision and this Court's review.

       a.   <u>The Five Day Rule</u>

Defendant does not dispute that none of the endorsing officers complied with Manual 1611-020(11)(h), which states that "[i]n the absence of unusual circumstances, the DFC request should be forwarded within 5 working days of receipt by each command in the routing chain." In Magneson's case, the time lapse between endorsements ranged from 13 to 26 days. As Defendant admits, had the officers followed the five day rule, Magneson's DFC would likely have been approved in January 2011—before his original February 2011 Planned Rotation Date—thus mooting Magneson's argument that Naval Personnel Command failed to approve the DFC request by Magneson's "normal transfer or planned rotation date." In any event, the parties agree that Manual 1611-020(11)(h) was not followed.

Defendant argues that the Navy's failure to comply with the five day rule is irrelevant because it is not a mandatory requirement, but a suggested timeline. According to Defendant, because the rule states that the DFC request "should" be forwarded within five days, and because "should" is advisory rather than mandatory, the Navy was not required to comply. (Def. Mot. 11-13). To read otherwise, Defendants argue, would mean that a delay of one day for a single endorsement in the entire chain of command would cause a *per se* violation voiding the DFC, which is an absurd result not required by the text of the rule. Lastly, Defendant argues that even if the rule is mandatory and the Navy failed to comply, Magneson suffered no prejudice as a result.

Magneson relies on the text of Manual 1611-020(11)(h) to argue that compliance with the five day rule is a mandatory requirement. As Magneson points out, 1611-020(11)(h) states that

"[e]xpeditious processing and forwarding of a DFC request is mandatory," which suggests that the rule is not a mere suggestion. The Navy is required to process DFC requests expeditiously because "the officer concerned is normally in a nonproductive status awaiting final determination of the request." Manual 1611-020(11)(h). Furthermore, the rule states that DFC requests should be forwarded in five days "[i]n the absence of unusual circumstances." *Id*. Magneson argues that interpreting the five day rule as non-binding reads this language out of the rule; if the rule was not mandatory, there would be no need to require unusual circumstances to deviate from it.

The Court's role here is to determine only whether "the decision making process was deficient, not whether [the] decision was correct." *Dickson,* 68 F.3d at 1405 (citation omitted). In this case, however, there is no decision making process to evaluate, because the BCNR failed to address (or even acknowledge) Magneson's arguments regarding the five day rule. In his application to the BCNR, Magneson explained that "[t]he complaint here is that the Navy failed to meet and comply with its own regulatory requirement" which "voided the DFC as a matter of law." (AR 8). One of the bases for his complaint was "the Navy['s] fail[ure] to meet mandatory dates for adjudication and endorsement of the DFC." (AR 9). Magneson attached a letter from his attorney to his application that more fully described the Navy's failure to comply with the five day rule. (AR 12-13). In its decision, the BCNR did not reference or discuss the five day rule. The entirety of its reasoning is as follows:

> After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice. In this connection, the Board substantially concurred with the advisory opinion in concluding the contested DFC should stand. In this regard, the Board particularly noted that Naval Military Personnel Manual Article 1611.020.1a says DFC is administrative removal "before . . . normal transfer or [emphasis added] planned rotation date," and that your DFC was approved before your transfer orders were issued on 3 May 2011. The Board found your DFC supported your removal from the promotion list, notwithstanding the recommendation of your command that you be promoted. In view of the above, your application has been denied.

(AR 1-2).  Because there is no reference to Magneson's argument regarding the five day rule, the

Court cannot discern the rationale behind the BCNR's decision on this issue.  *See Dickson,* 68

F.3d at 1404 (the "agency's explanation must minimally contain 'a rational connection between

the facts found and the choice made'" (internal quotation marks and citations omitted)); *Kreis,*

866 F.2d at 1514-15 (Secretary "must give a reason that a court can measure, albeit with all due

deference, against the 'arbitrary or capricious' standard of the APA.").

Defendant argues that, despite its failure to explicitly acknowledge it, the BCNR did

address the five day rule.  First, Defendant argues that the BCNR relied on the advisory opinion

provided by the Naval Personnel Command, meaning the advisory opinion's rationale is

incorporated by reference into the BCNR's decision.  (Def. Reply 8).  But even if the BCNR did

incorporate the advisory opinion, the opinion itself nowhere addresses the five day rule.  It

merely notes that the DFC request "was submitted well in advance of LT Magneson's [Planned

Rotation Date], but was not completed until the same month of his [Planned Rotation Date].

Recommend the DFC remain in LT Magneson's official record."  (AR 52).  There is no

reference to the delayed endorsements or Magneson's arguments regarding the five day rule.

The closest the advisory opinion comes to referencing the five day rule is an acknowledgment

that Naval Personnel Command received a memorandum from Magneson's counsel.  There is no

description of the memorandum, no acknowledgment that it included an argument regarding the

five day rule (which it did), and no analysis of Magneson's claims.  Incorporating the advisory

opinion by reference does nothing to establish that the BCNR considered the five day rule, as the

opinion itself similarly falls short in this regard.

Second, Defendant argues that because the BCNR considered the entire record, this

means it necessarily considered Magneson's five day rule argument because it was included in

materials in the record.  (Def. Reply 8).  Similarly, Defendant argues that because the BCNR

considered all "applicable statutes, regulations and policies," which would have included a

review for compliance with Manual 1611-020, the BCNR necessarily concluded that the Navy

complied with the five day rule or was not required to.  (Def. Reply 10).  Defendant essentially

asks the Court to assume—with no written record to corroborate—that the BCNR must have

considered Magneson's argument and found it unavailing, because otherwise the BCNR would

not have ruled the way that it did.  This inference is based on speculation and not supported by

the record, and the Court cannot "supply a reasoned basis for the [agency's] decisions that the

[agency] itself has not offered."  *Puerto Rico Higher Educ. Assistance Corp. v. Riley*, 10 F.3d

847, 850 (D.C. Cir. 1993) (citation omitted).  Defendant may be correct that the BCNR would

have found that the five day rule was not mandatory, or that the Navy's violation of the five day

rule was harmless error that does not afford relief or impact its decision.  But the BCNR could

also have found the delayed endorsements a "material error or injustice" that voids the DFC.  It

is impossible to know what the BCNR would find because it never addressed this claim.  *See*

*Dickson*, 68 F.3d at 1405-06 (a court "cannot determine whether the decision making process

was deficient until [it is] allowed to understand what that process was.").  Because the BCNR did

not address an argument that is "not facially frivolous," *Frizelle*, 111 F.3d at 174, the case must

be remanded to the BCNR "so that the BCNR can consider and respond to the argument."

*Pettiford*, 774 F. Supp. 2d at 185.  *See Frizelle,* 111 F.3d at 177 (remanding to Coast Guard

Board for Correction of Military Records because the Board "did not respond to two of

[plaintiff's] arguments, which do not appear frivolous on their face and could affect the Board's

ultimate disposition"); *Poole v. Harvey,* 571 F. Supp. 2d 120, 126 (D.D.C. 2008) (remanding to

Army Board for Correction of Military Records because plaintiff's argument was "non-frivolous

and potentially meritorious and the [Board] failed to address it"); *Roberts v. Harvey,* 441 F.

Supp. 2d 111, 121-22 (D.D.C. 2006) (remanding to Army Board for Correction of Military

Records for failure to address argument); *Calloway v. Brownlee,* 366 F. Supp. 2d 43, 55 (D.D.C.

2005) (same).  On remand, "the BCNR is free to reject plaintiff's argument, but 'it must

expressly indicate that it has done so' and 'explain its rationale.'"  *Pettiford*, 774 F. Supp. 2d at

185 (citing *Calloway*, 366 F. Supp. 2d at 55 (internal quotations omitted)).

   b.   Normal Transfer or Planned Rotation Date

   Magneson's second claim is that under Manual 1611-020, a DFC is "the administrative

removal of an officer . . . from the officer's current duty assignment before their normal transfer

or planned rotation date," and because his DFC did not occur before his original Planned

Rotation Date, it was invalid.  Defendant argues that the DFC did occur before Magneson's

Planned Rotation Date because that date was extended, and Magneson's argument that only the

original Planned Rotation Date may be considered is unsupported by the plain text of the rule.

The Navy argued before the BCNR, and continues to argue now, that "the DFC request was

received prior to Plaintiff's projected rotation date, and approved by [Naval Personnel

Command] in March, the same month as Plaintiff's new projected date, considering his orders to

the USS REUBEN JAMES had been extended."  (Def. Mot. 17; AR 52).  Therefore, according

to Defendant, because the DFC was approved the same month as Magneson's amended Planned

Rotation Date, Magneson was removed "before [his] normal transfer or planned rotation date."

   As discussed above, the BCNR stated in its decision that it was relying on the Naval

Personnel Command advisory opinion in its analysis.  However, the BCNR found the DFC

timely for a reason never raised by the Navy in the advisory opinion: according to the BCNR, the

DFC was timely because it "was approved before your transfer orders were issued on 3 May

2011." (AR 2).  There is no discussion of why the actual date of transfer is relevant (given that transfer orders presumably always follow a DFC order, the Board's interpretation appears to render the Manual provision meaningless), if the BCNR considered the May 3 transfer as Magneson's "normal transfer" date, or why the BCNR simultaneously claimed to "substantially concur[]" with the advisory opinion while also using a different basis for its conclusion.  The BCNR also does not address the issue of Magneson's two Planned Rotation Dates and what effect, if any, the extension of the date had on Magneson's DFC.  Because the Court is remanding for failure to address the five day rule, it will not find the BCNR's findings *per se* arbitrary with respect to this issue.  However, on remand it would be helpful to understand what relevance the May 3 transfer has to Magneson's arguments and how the Board decided that May 3 was the relevant date when it was not presented that argument by either of the parties.[2]  *See Dickson,* 68 F.3d at 1405 (remanding to Army Board for Correction of Military Records because "boilerplate language used by the Board ma[de] it impossible to discern the Board's 'path'").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part because the Court is remanding to the BCNR, and denied in part because the Court will not address the merits of Magneson's substantive arguments.  Defendant's motion for summary judgment is denied.  The March 15, 2012 decision of the BCNR will be set aside and the case will be remanded to the BCNR for further proceedings in accordance with this opinion.  An appropriate Order accompanies this Memorandum Opinion.

---

[2] Should the BCNR choose to adopt the Navy's reasoning, it would also be helpful to understand if a DFC request approved the same month as a Planned Rotation Date is nonetheless deemed approved "*before* [the] normal transfer or planned rotation date."

Date:  March 30, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge