## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| ISRAEL A. MAGNESON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-1053 (TSC) (DAR) |
| | ) | |
| RAYMOND EDWIN MABUS, JR., *in his* | ) | |
| *official capacity as the Secretary of the* | ) | |
| *Navy*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Israel Magneson challenges the Board for Correction of Naval Records' denial of his application to correct his military record. Shortly after it was filed, this case was referred to a Magistrate Judge for full case management. The parties then filed a motion to dismiss and cross-motions for summary judgment, all of which the Magistrate Judge denied without prejudice to allow Magneson to amend his Complaint, which he did on October 1, 2013. The parties again filed cross-motions for summary judgment, and the Magistrate Judge issued a Report and Recommendation on October 28, 2014, recommending that Plaintiff's motion be denied, and Defendant's granted. Without taking a position on the Magistrate Judge's Report and Recommendation, this court remanded the case to the Board for Correction of Naval Records (the "Board") to consider one of Plaintiff's arguments. After addressing Plaintiff's arguments, the Board again rejected Plaintiff's application, and the parties renewed their cross-motions for summary judgment. Having considered the pleadings and the record, for the reasons stated herein, Plaintiff's motion is DENIED and Defendant's motion is GRANTED.

## I.     BACKGROUND

Plaintiff Magneson is a former Lieutenant in the United States Navy.  (Am. Compl. ¶ 3).
Pursuant to orders issued in February 2009, Magneson reported aboard the USS REUBEN
JAMES on August 4, 2009, and began duties as the Chief Engineer on September 28, 2009.
(Am. Compl. ¶¶ 5-6; Administrative Record ("AR") 15).  The 2009 Orders also set Magneson's
Planned Rotation Date—the date he would transition from the JAMES to a different duty
station—as February 2011.  (AR 44).

Magneson's tenure as Chief Engineer proved troublesome.  During his period aboard the
JAMES, Magneson's Commanding Officer verbally counseled him multiple times for his
deficient performance.  (Def.'s First Mot. for Summ. J. at 3).  In addition to verbal counseling,
Magneson received two written Letters of Instruction detailing his failure to maintain and lead
his department, and requiring specific corrective actions.  (AR 15-24).  On July 2, 2010, after
determining that Magneson had failed to follow the directives in his second Letter of Instruction,
the Commanding Officer requested a Detachment for Cause ("DFC") from Navy Personnel
Command, "based on [Magneson's] unsatisfactory performance over an extended period of
time."  (AR 15-17).  A DFC, which removes an officer from their current post prior to their
normal transfer or planned rotation date, "has a serious effect on the officer's future naval
career," and "is one of the strongest administrative measures used in the case of officers."
(Def.'s First Mot. Summ. J., Ex. 1 at 2, Naval Military Personnel Manual (the "Manual") 1611-
020(1)(b)).

DFC's are processed according to Manual 1611-020.  (*Id.*).  Once a DFC is requested, the
officer is given a chance to respond, which Magneson did on July 16, 2010.  (AR 25-30).  The
request and response are then forwarded through the officer's chain of command and up to Navy

Personnel Command, with each officer in the chain of command required to endorse the request for it to take effect. (Def.'s First Mot. Summ. J., Ex. 1 at 7-10). In Magneson's case, the DFC was endorsed five times by four different officers. (AR 31-34). The first endorsement occurred when the Commanding Officer originally requested the DFC. (AR 13). The Commanding Officer then endorsed the DFC a second time on July 30, 2010, after receiving Magneson's rebuttal. (*Id*.). The third, fourth, and fifth endorsements occurred on August 17, September 11, and September 23, 2010, respectively. (*Id*.). Navy Personnel Command acknowledged receipt of the endorsed DFC request on January 5, 2011, and due to the pending DFC, extended Magneson's orders aboard the JAMES past February 2011, setting a new Planned Rotation Date of March 2011. (Am. Compl. ¶ 14).

While the DFC request was pending, Magneson became eligible for promotion to Lieutenant Commander. The officers in his chain of command, all of whom had endorsed the DFC, did not recommend that Magneson be removed from the promotion list, but the promotion was nonetheless delayed due to the pending DFC. (Am. Compl. ¶¶ 15-16; AR 39). On March 10, 2011, approximately one month after notifying Magneson that his promotion was delayed, Navy Personnel Command formally approved the DFC request, and on May 3, 2011, issued Permanent Change of Station orders transferring Magneson to a new duty assignment. (Am. Compl. ¶ 19; AR 66).

Because of the likelihood that a DFC would not only delay his promotion, but prevent a promotion entirely, in early May 2011 Magneson submitted an application to the Board requesting that the DFC be expunged from his record, and that he be promoted to Lieutenant Commander. (Am. Compl. ¶ 28). The Board was established by the Secretary of the Navy, and is comprised of civilians who "consider applications properly before it for the purpose of

determining the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized." 32 C.F.R. § 723.2(b); *see also* 10 U.S.C. § 1552. The Board reviews "all pertinent evidence of record," and will deny an application where it finds "insufficient evidence to demonstrate the existence of probable material error or injustice." 32 C.F.R. § 723.3(e)(1)-(2). The Board "relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties." *Id.* § 723.3(e)(2).

Magneson alleged in his Board application that "the Navy failed to follow its own [nondiscretionary] regulatory scheme" in two ways. (AR 116). First, Magneson argued that Manual 1611-020(1)(a) requires a DFC to be finalized prior to a service member's Planned Rotation Date, and because the Commander of Navy Personnel Command did not approve the DFC until after his initial Planned Rotation Date of February 11, 2011, the Navy improperly ignored its own regulations. (AR 107) (citing Bureau of Navy Personnel Instruction 1610.10B, para 3-6(h)). Second, Magneson claimed that the DFC request was not forwarded from one level of the chain of command to the next within five working days, again in violation of the Manual, which provides that "[i]n the absence of unusual circumstances, the DFC request should be forwarded within 5 working days of receipt by each command in the routing chain." (AR 108) (citing Manual 1611-020(11)(h)).

After having his promotion delayed, Magneson was removed from the Lieutenant Commander promotion list on December 7, 2011. (Am. Compl. ¶ 20). The Board denied Magneson's application on March 15, 2012, on the grounds that "the evidence submitted was

insufficient to establish the existence of probable material error or injustice." (AR 1). Specifically, the Board noted that Manual 1611.020.(1)(a) states that a DFC is an administrative removal "before . . . [an officer's] normal <u>or</u> planned rotation date," and because Magneson's DFC was approved prior to the issuance of his transfer orders on May 3, 2011, there had been no violation of Navy regulations. (AR 2) (emphasis in original). The Board also found that the DFC provided a basis for removing Magneson from the promotion list, despite the fact that the officers in his chain of command recommended keeping him on the list. (*Id*.). Magneson then filed this suit in June 2012.

Magneson alleges that the Secretary of the Navy, through the Board, abused discretion, acted arbitrarily and capriciously, and contrary to regulation for two reasons. (Am Compl. ¶ 41). First, the Board did not address whether the Navy "failed to meet mandatory response dates required by its own procedural regulation" by not following the five-day rule in Manual 1611-020(11)(h). (*Id*.). Second, the Board failed to find that the Navy violated its own regulations when Navy Personnel Command approved Magneson's DFC after his Planned Rotation Date. (*Id*.). With regard to the second issue, Plaintiff also alleges that the Board incorrectly concluded that "normal transfer" in Manual 1611-020(1)(a) is equivalent to "transfer orders," when nothing in the regulatory scheme supports this conclusion. (*Id.*). These allegedly arbitrary and capricious actions harmed Magneson by "delaying his career progression and ultimately causing him to be involuntarily separated from the Navy."[1] (*Id.* ¶ 42).

This court remanded the case for consideration of Magneson's five-day rule allegation. The Board reaffirmed its denial of Magneson's claim, finding first that the use of the word

---

[1] In February 2013 (after the suit was filed), Magneson was involuntarily separated from the United States Navy for non-selection to the next higher rank, allegedly because of his removal from the Lieutenant Commander promotion list as a result of the DFC. (Am. Compl. ¶ 40).

"should" in the five-day rule rendered the provision advisory, not mandatory.  (AR 137).

Further, the Board found any violation of the five-day rule harmless, as it did not affect the

outcome of the DFC proceedings.  (*Id.*).  The Board noted that the rationale for a DFC, as

discussed in Manual 1611-020(1)(b), is to remove an officer from his or her position when the

officer's "performance or conduct detracts from accomplishing the command's mission, and the

officer's continuance in the billet can only negatively impact the command."  (*Id.*).  The Board

found that so as long as Magneson remained in his billet aboard the JAMES, and his

Commanding Officer continued to believe that Magneson's service there detracted from the

mission, then Navy Personnel Command could properly approve the DFC up until the point at

which Magneson transferred to a new duty station.  (*Id.*).  Thus since Magneson's transfer orders

were issued in May, Navy Personnel Command complied with Navy regulations by approving

the DFC in March.  (*Id.*).[2]

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  FED. R. CIV. P. 56(a).  However, since the court reviews the

Board's decision under the Administrative Procedure Act, 5 U.S.C. § 706, the standard "set forth

in Rule 56(c) does not apply because of the limited role of a court in reviewing the

administrative record."  *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C.

2007).  Instead, "[s]ummary judgment serves as the mechanism for deciding, as a matter of law,

---

[2] Plaintiff asserts in his renewed motion for summary judgment that the Board "abandoned May 3, 2011, as a dispositive or even meaningful date." (Pl.' Ren. Mot. Summ. J. at 3).  But as Defendant correctly points out, the Board's discussion of the "May" transfer in its decision clearly referred to the May 3 transfer date.  (AR 137).

whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Id.*

Under APA Section 706, a court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The court's review is "highly deferential" and begins with a presumption that the agency's actions are valid.  *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). The court is "not empowered to substitute its judgment for that of the agency," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), but instead must consider only "whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors."  *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014) (citing *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)).

A plaintiff bears the burden of establishing the invalidity of the agency's action.  *Id.* "[A]n agency's decision [need not] be a model of analytic precision to survive a challenge." *Dickson v. Sec'y of Def.,* 68 F.3d 1396, 1404 (D.C. Cir. 1995).  All that is required is that the agency's decisions provide "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) (internal citation and quotation marks omitted).  Thus, a court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Dickson,* 68 F.3d at 1404 (internal citation omitted).

The Board (under its delegated authority from the Secretary of the Navy) has broad discretion when considering an application for correction.  Military corrections boards "*may*

correct any military record . . . necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (emphasis added). As a result, a court reviewing a military corrections board's decision applies an "unusually deferential application of the 'arbitrary or capricious' standard." *Kreis v. Sec'y of Air Force,* 866 F.2d 1508, 1514 (D.C. Cir. 1989). In *Kreis*, which involved an Air Force officer seeking retroactive promotion, or correction of his military record due to allegedly arbitrary and capricious actions by the Secretary of the Air Force, the court noted that "[w]hile the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination." *Id.* "It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary* to correct an error or remove an injustice . . .'" *Id.* (citing 10 U.S.C. § 1552(a)) (emphasis in original). Thus, when reviewing a military corrections board decision, a court's role is to determine only whether "the decision making process was deficient, not whether [the] decision was correct." *Dickson,* 68 F.3d at 1405 (internal citation omitted). However, "[t]o enable a court to perform that review and ensure that the decision is not 'utterly unreviewable,' a military corrections board 'must give a reason that a court can measure, albeit with all due deference, against the "arbitrary or capricious" standard of the APA.'" *Pettiford v. Sec'y of Navy*, 774 F. Supp. 2d 173, 182 (D.D.C. 2011) (citing *Kreis,* 866 F.2d at 1514–15). As the D.C. Circuit recently noted, military corrections boards must "take care to sufficiently address each non-frivolous claim raised by an applicant for record correction." *Jackson v. Mabus*, 808 F.3d 933, 938 (D.C. Cir. 2015).

### III.    ANALYSIS

Plaintiff reiterates the arguments he made before the Board here, namely that the Board erred and acted in an arbitrary and capricious manner for not finding that the Navy violated its own regulations by: (1) not following the requirement in Manual 1611-020(11)(h) that a DFC request be forwarded within five days of receipt by each endorsing officer; and (2) not approving the DFC request by Magneson's normal transfer or planned rotation date, as required by Manual 1611-020(1)(a).  (Pl.'s Ren. Mot. Summ. J. at 3).  Defendant argues that the Board's decision was not arbitrary and capricious, and that while Magneson may disagree with the Board's decision, he cannot claim that its decision making process was deficient since it only reached its decision after considering all relevant materials.  (Def.'s Ren. Mot. Summ. J. at 4, 11).

#### a.    The Five-Day Rule

Manual 1611-020(11)(h) provides that:

> Expeditious processing and forwarding of a DFC request is mandatory, as the officer concerned is normally in a nonproductive status awaiting final determination of the request. In the absence of unusual circumstances, the DFC request should be forwarded within 5 working days of receipt by each command in the routing chain.

The parties agree that it took each member of Magneson's chain of command more than five days to sign off and forward his DFC, but disagree on the nature of the five-day rule.

Magneson's argument that the five-day rule is a mandatory provision is based on the phrase "[e]xpeditious processing and forwarding of a DFC request is mandatory," and he argues that these words make the entire provision directory in nature.  (Pl.'s Mot. Summ. J. at 5).[3] Plaintiff further asserts that the word "mandatory" controls the entire provision, and not just the

---

[3] Plaintiff incorporates the arguments from his Motion for Summary Judgment (ECF No. 24) into his Renewed Motion for Summary Judgment (ECF No. 39).

phrase "expeditious processing," because—as Manual 1611-020 states—the officer facing the

DFC "is normally in a nonproductive status awaiting final determination of the request," so it is

in the interest of the Navy, and the officer in question, to act expeditiously.  (Pl.'s Mot. Summ J.

at 5-6).  Magneson argues that his own experience bears this out: had the five-day rule been

followed, his DFC would have been resolved in August 2010.  (Pl.'s Ren. Mot. Summ. J at 4).

Instead, he remained in "nonproductive" status until May 2011, when he was finally given

transfer orders.  (*Id*. at 3).  Magneson also points out that there were no unusual circumstances

connected to his DFC that excused any delay beyond five days.  (Pl.'s Mot. Summ. J. at 5). [4]

Defendant argues that the Board clearly explained its decision, and since the court's role

is to determine only whether "the decision making process was deficient, not whether the

decision was correct," summary judgment for Defendant is proper.  (Def.'s Ren. Mot. Summ. J.

at 8) (citing *Dickson*, 68 F.3d at 1405) (internal citation omitted).  Defendant also argues that if

the provision is mandatory, a delay of one day for a single endorsement in the entire chain of

command would cause a *per se* violation voiding the DFC, which is an absurd result not required

by the text of the rule.  (Def.'s Mot. Summ. J. at 13).

On remand, the Board reconsidered Plaintiff's five-day rule argument, and found that:

> [Magneson's] allegations of error and injustice were reviewed in accordance with
> administrative regulations and procedures applicable to the proceedings of this
> Board. Documentary material considered by the Board consisted of your

---

[4] Plaintiff attempts to distinguish the deference the court owes in the normal APA military board review context from his own situation.  In his motion for summary judgment, he argues that *no* deference need be afforded by a court when "circumstance[s] arise[] when the courts are asked to determine whether the military had followed its self-imposed procedural regulatory scheme."  (Pl.'s Mot. Summ. J. at 3).  Plaintiff then cites to authority which does not support this proposition.  For example, his citation to *Bond v. U.S.* 47 Fed. Cl. 641 (2000) is taken completely out of context.  *Bond* noted that "although the deference accorded to military actions by the judiciary is substantial, it is not unlimited."  *Id*. at 647.  This is far different from saying *no* deference is afforded.  Further, the discussion from which Plaintiff's quote is excerpted is about the justiciability of a claim; e.g., that an Article III court may hear challenges on whether or not the military followed its own regulations, "because by their nature the procedures limit the military's discretion."  *Id.* at 648.   Similar flawed logic attends to every other citation Plaintiff produces in support of his proposition that the court owes no deference to the Board's decision.  As the D.C. Circuit recently held in a review of the Board's decision to deny a Naval Officer's request to correct his record, "the arbitrary and capricious standard is even more deferential in the military records context." *Jackson*, 808 F.3d at 936.

application, together with all material submitted in support thereof, the Board's file on your previous case, and the applicable statutes, regulations and policies. In addition, the Board considered the advisory opinion furnished by the Navy Personnel Command . . . [and] the Board found that the evidence submitted was insufficient to establish the existence of probably material error or injustice.

(AR 136). After considering all of these materials, the Board found the five-day rule to be discretionary due to the use of the word "should." (AR 137). Under the deferential standard of review to which the court must adhere, the Board's decision-making process and proffered response is not deficient, because the analysis of the text and related provisions provides "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal citation and quotation marks omitted).

Magneson's case stands in contrast to *Dickson v. Secretary of Defense*, where the court found a military corrections board's decision-making flawed. In that case, Plaintiffs applied for an upgrade to their discharge classifications, and the Army Board denied their requests to waive the applicable statute of limitations period. *Dickson*, 68 F.3d at 1398. The Court found the Army Board's decision arbitrary and capricious because "the Board failed to provide anything approaching a reasoned explanation for its decisions." *Id.* at 1404-05. Specifically, the Board provided only a recitation of the applicable statutory language without giving an account of how it reached its decision, nor did it connect the facts of the case to the decision it made. *Id.* In Magneson's case, the Board discussed how the text of Manual 1611-0202(11)(h) and the fact that Magneson was not prejudiced led to its decision. The court is tasked "only with gauging the adequacy of the Board's decision making process," and finds here that it was. *Jackson v. Mabus*, 919 F. Supp. 2d 117, 121 (D.D.C. 2013), *aff'd sub nom.*, 808 F.3d 933 (D.C. Cir. 2015).

    b.  <u>Normal Transfer or Planned Rotation Date</u>

Magneson's second claim involves Manual 1611-020(1)(a):

> Detachment for Cause (DFC) is the administrative removal of an officer, whether on active duty or in the Selected Reserve, from the officer's current duty assignment before their normal transfer or planned rotation date. An approved DFC waives minimum time on station (MTS) and prescribed tour length (PTL) requirements for releasing permanent change of station (PCS) funds.

Both parties agree that prior to the initiation of the DFC process, Magneson's Planned Rotation Date was February 2011, and that Magneson's DFC was approved on March 10, 2011.

Magneson argues that the Board's decision is arbitrary and capricious because the text of the Manual and Bureau of Navy Personnel Instruction 1610.10B required Navy Personnel Command to approve his DFC prior to February 2011. (*See* Pl.'s Mot. Summ. J. at 7). Magneson claims the term "normal transfer date" is a synonym for Planned Rotation Date, so the Board's position that his normal transfer occurred in May has no grounding in law or regulation and is an abuse of discretion. (*Id*. at 7-10). Magneson also asserts that moving his Planned Rotation Date from February 2011 to March 2011 was an attempt to evade the provisions of Manual 1611-020. (*Id.* at 7-8).[5]

Defendant argues that the Board properly read Manual 1611-020 to mean that the DFC needed only to be approved prior to the date Magneson was actually transferable—which occurred in May. (Def.'s Ren. Mot. Summ. J. at 8-9). Defendant also argues that any delays in processing occurred because the Commanding Officer was required to wait until completion of the administrative process for final approval. (*Id*. at 9-10). Thus Plaintiff's assertions are mere speculation, and do not meet the standard required to overturn the Board's finding. (*Id*. at 10).

Under its deferential standard of review, the court's role is not to determine whether the final decision was correct. "A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Dickson,* 68 F.3d at 1404 (citing *Bowman*

---

[5] The impact of moving the Proposed Rotation Date from February 2011 to March 2011 was not discussed by the Board on remand.

*Transp., Inc. v. Arkansas–Best Motor Freight System*, 419 U.S. 281, 286 (1974)).  The April 2015 Board decision was not the result of a flawed decision-making process;  the Board, in a multi-paragraph analysis, made a "rational connection" between the facts surrounding Magneson's DFC, the regulation at issue, its purpose, and the timing of the DFC.  *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43 (internal citation and quotation marks omitted).  Having so found, the court grants the Defendant's motion for summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.  A corresponding order shall issue separately.


Date:  March 31, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge